# SLINGLUFF *v.* SWEET.

# SWEET *v.* SLINGLUFF.

PATENTS; INTERFERENCE; PATENTABILITY; REDUCTION TO PRACTICE.

1. Whether the issue in an interference is patentable in view of the prior art and other patents will not be considered by this court on an appeal from a decision awarding priority, even though one of the parties, who had failed to overcome his adversary's prior record date, was permitted by the Commissioner of Patents to introduce evidence to that effect. (Citing *Sobey* v. *Holsclaw*, 28 App. D. C. 65; *Burson* v. *Vogel*, 29 App. D. C. 388; *Gueniffet* v. *Wictorsohn*, 30 App. D. C. 432; *Mell* v. *Midgley*, 31 App. D. C. 534; *Re Fullager*, 32 App. D. C. 222; *Norling* v. *Hayes*, 37 App. D. C. 169; and *Lecroix* v. *Tyberg*, 33 App. D. C. 586.)

2. Where the invention involved in an interference was a method for drawing glass cylinders such as are used in making commercial window glass, the production by one of the parties, in a test of an apparatus erected by him, of cylinders 40 inches in length, was *held* to be as complete a demonstration of the method and, therefore, of the utility of the invention, as the production of a much longer cylinder, as any skilled workman under normal conditions would have no difficulty in producing longer cylinders, if desired.

Nos. 1038 and 1039. Patent Appeals. Submitted May 11, 1916. Decided May 22, 1916.

HEARING on appeals from decisions of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. C. P. Byrnes* and *Mr. G. H. Parmelee* for Sweet.

*Mr. Ernest Wilkinson* and *Mr. C. C. Stauffer* for Spinasse.

*Mr. James C. Bradley* for Slingluff.

Mr. Justice Robb delivered the opinion of the Court:

These are appeals from decisions of the Commissioner of Patents in an interference proceeding in which priority of invention was awarded to the party Arthur E. Spinasse.

The invention is a method for drawing glass cylinders, such as are used in making commercial window glass. In the prior practice a heated bait was used, the result being that more or less glass adhered thereto. This made it necessary, before the bait could be used again, to remove this glass, and, of course, it also was necessary to reheat the bait. Under the present invention a cold bait is used and the objectionable features of the prior art thereby are overcome entirely. In short, as was found by the Patent Office and readily conceded at the bar, this invention is of great utility.

The single count reads as follows:

"The herein-described method of drawing glass cylinders from a body of glass with a metal bait having its bottom open and its interior thereabove of a larger dimension than the opening, which consists in maintaining the bait at a temperature to chill the glass, immersing the bait while at such temperature to such a depth as to permit the glass to flow upward into the enlarged interior where it is chilled by the relatively low temperature of the bait, and then raising the bait supporting the cylinder as it is drawn by the glass within the bait and applying air pressure to its interior, with the glass upon the interior of the bait supported free to shrink radially toward the center of the bait."

We first will dispose of the contention of the party Sweet, who failed to overcome Spinasse's prior record date, but who was permitted by the Patent Office to introduce evidence to show that the issue was not patentable over the prior art, including a patent to Spinasse. It is urged that inasmuch as Sweet was permitted to present this question to the Patent Office tribunals, we should consider it here. But we repeatedly have ruled that our jurisdiction in interference proceedings is

confined to a determination of the question of priority. *Norling* v. *Hayes,* 37 App. D. C. 169; *Re Fullager,* 32 App. D. C. 222. We further have ruled that in such a proceeding we would not consider whether a statutory bar existed to the grant of a patent to the successful party, since that question was for the consideration of the Commissioner alone. *Burson* v. *Vogel,* 29 App. D. C. 388; *Norling* v. *Hayes,* 37 App. D. C. 169. And, in *Gueniffet* v. *Wictorsohn,* 30 App. D. C. 432, it was ruled that whether either of the parties ultimately will have a right to a patent under his pending application will not be determined in an interference proceeding, where the issue is that of priority of invention. In *Sobey* v. *Holsclaw,* 28 App. D. C. 65; *Mell* v. *Midgley,* 31 App. D. C. 534; and *Lecroix* v. *Tyberg,* 33 App. D. C. 586, we ruled that the question of the patentability of the alleged invention would not be considered by us in an interference proceeding. We therefore rule that Sweet has no standing in this proceeding, and hence that his appeal must be dismissed.

We come now to the controversy between Spinasse and Slingluff. That Spinasse was the first to conceive is conceded, and well it may be, since his evidence is conclusive upon this point and shows that he made and disclosed the invention in November of 1909. He was a workman, without means, but after exhibiting his invention to several he erected in his cottage, in the spring of 1910, an apparatus for the purpose of testing it, and produced glass cylinders by his process from 6 to 10 inches in diameter and from 6 to 40 inches in length. The largest cylinders drawn, when cut and flattened, would produce a plate about 30 by 44 inches, which would be enough to form about 16 panes 8 by 10. The Examiner of Interferences ruled that these experiments sufficiently demonstrated the practicability of the invention and therefore amounted to reduction to practice. In this we concur. It is urged by Slingluff that the cylinders were not sufficiently long, but we find nothing in the claim as to either the length of the cylinder or the purpose for which it is to be drawn. As the Examiner of Interferences pertinently suggests, "the invention in issue is a method of drawing glass cylinders,

not a method of producing flat window glass. It was known, as a part of the prior art, that cylinders of glass could be capped, split, and flattened. These operations constituted no part of the invention in issue." That longer cylinders were not produced at this time was due solely to the cramped quarters in which the apparatus was installed. The production of a cylinder 40 inches in length, however, as fully demonstrated the utility of the cold-bait process, that is, the utility of the invention in issue, as the production of a much longer cylinder. While it was well known that longer cylinders could be drawn, it was not known that cylinders of any length could be produced by this process, but this later fact was demonstrated clearly in these experiments. Any skilled workmen, under normal conditions, would have had no difficulty whatever in producing longer cylinders if they were desired.

In October, 1910, Spinasse had certain interviews with officials of the Pittsburg Plate Glass Company, including Slingluff. He had with him his bait, in which was a cylinder, and the evidence clearly shows that it had been drawn by the cold-bait process. Slingluff's alleged date of conception *was later than this interview.* However, our ruling that Spinasse already had reduced the invention to practice renders it unnecessary to determine whether Slingluff derived the invention from Spinasse.

The decision is affirmed.                    *Affirmed.*